IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SAMUEL LANIER, #182893,      )
                                     )
      Plaintiff,          )
                                     )
                                     )
     v.                    )  CIVIL ACTION NO. 2:08-CV-182-WKW
                                     )              [WO]
                                     )
CONNIE BEDSOLE,              )
                                     )
      Defendant.        )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, as amended, Samuel Lanier ["Lanier"], a state inmate, challenges actions taken against him during his incarceration at the Ventress Correctional Facility.   Specifically, Lanier asserts Connie Bedsole, a drug program specialist for the Alabama Department of Corrections, violated his right to equal protection when she dismissed him from a substance abuse program because he is "a black man and a little mental."   *Plaintiff's Complaint - Court Doc. No. 1* at 3.   Lanier also argues defendant Bedsole retaliated against him due to a lawsuit filed by Frederick Rivers, a fellow inmate, in which Rivers challenged actions taken against him by the defendant and other correctional officials. *Amendment to the Complaint - Court Doc. No. 11* at 1. Lanier seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendant filed a special report and supporting evidentiary materials addressing each of Lanier's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the report as a motion for summary judgment.  *Order of April 30, 2008 - Court Doc. No. 8*; *Order of May 29, 2008 - Court Doc. No. 15*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the reports, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendant has met her evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

3

sufficient evidence regarding such issues of judgment to allow him to prevail
on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendant's properly supported motion for

summary judgment, Lanier is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own

4

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Lanier fails to demonstrate a requisite genuine issue of material fact in order to

preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims lodged against the defendant in her official capacity, she is immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that defendant Bedsole is a state official entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, defendant Bedsole is entitled to absolute immunity from any claims for monetary relief

presented against her in her official capacity.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  The Equal Protection Claim

Lanier contends defendant Bedsole violated his right to equal protection when she removed him from the Crime Bill Substance Abuse Program due his race and mental condition.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts*

8

*v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendant, Lanier bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of defendant Bedsole resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendant.  *Anderson*, 477 U.S. at 249.

Defendant Bedsole adamantly denies she undertook any action against the plaintiff due to his race or mental status; rather, Bedsole maintains her decision to remove Bedsole from the substance abuse program resulted from his repeated violations of departmental

rules and regulations governing the program.  *Defendant's Exhibit 1 (Affidavit of Connie Bedsole) - Court Doc. No. 6-11* at 2.  The undisputed evidentiary materials, including several rule violation reports contained in Lanier's prison file, support this assertion.

Initially, the court notes that Lanier fails to identify any similarly situated inmate who received more favorable treatment.  Thus, "[Lanier's] equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319.  Additionally, it is clear from the only evidentiary materials properly before the court that defendant Bedsole based her decision to remove Lanier from the treatment program solely on his violations of the program's rules.  Lanier has utterly and completely failed to present any evidence, significantly probative or otherwise, that either his race or mental health issues constituted a motivating factor in the challenged decision.  Beyond his self-serving and conclusory allegations of discrimination, Lanier produces nothing which suggests that racial or mental health animus motivated Bedsole's action.  The removal of Lanier from the drug treatment program therefore did not deprive him of equal protection and the defendant is entitled to summary judgment on this claim

## C.  Retaliation

Lanier asserts his removal from the substance abuse program occurred in retaliation for inmate Frederick Rivers filing a previous civil action against the defendant. Defendant

Bedsole, however, maintains Lanier's removal from the program "had nothing to do with a lawsuit filed by Frederick Rivers" and, instead, transpired due to Rivers' failure to abide by the rules of the program. *Defendant's Exhibit 3 (Supplemental Affidavit of Connie Bedsole) Court Doc. No. 14-1* at 2.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S.

396, 405, 94 S.Ct. 1800, 1807 (1974)].   As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987).   Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.   In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.   Thus, while inmates retain a constitutional right protected by the First Amendment to access the courts, this

12

right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish*, 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of [access to the courts].  *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)]....  The gist of a retaliation claim is that a prisoner is penalized for exercising a [protected] right...."  *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  "In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify

restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted)....  [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166.

        To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected

14

speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).   With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that ***his*** conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendant. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). (emphasis added).   Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").   If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.   "Under

15

the *Mt. Healthy* approach, if the government official 'can prove that [she] would have taken the adverse action in the absence of the plaintiff's protected conduct, [she] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d at 1278 n.22.

Lanier alleges the defendant retaliated against him for another inmate exercising that inmate's right of access to the courts. Thus, Lanier fails to satisfy the first requisite element of a retaliation claim. *Smith*, 532 F.3d at 1277. Under the circumstances of this case, the presence of the second element is likewise absent. In addition, Lanier fails to satisfy the third element of a retaliation claim - a causal connection between ***his*** exercising a constitutionally protected right and the adverse action of the defendant.[2] Specifically, Lanier does not allege that the retaliation occurred for his exercising his right of access to the courts but because inmate Frederick Rivers exercised this right. Moreover, even had Lanier made the requisite allegation that he had undertaken a protected activity on which the defendant based her decision, Lanier is nevertheless entitled to no relief as defendant Bedsole has shown that she would have taken the same action in the absence of any alleged protected activity. *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis. In light of the foregoing, summary judgment is due to be granted in favor of

---

[2]The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and a court must therefore determine "whether the defendants were ***subjectively motivated*** to" undertake the challenged action against an inmate for his exercising a constitutionally protected right. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

defendant Bedsole on the retaliation claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff for which execution may issue..

It is further

ORDERED that on or before August 5, 2010 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d

33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en*

*banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down

prior to the close of business on September 30, 1981.

      Done this 22nd day of July, 2010.


      /s/ Wallace Capel, Jr.
      WALLACE CAPEL, JR.
      UNITED STATES MAGISTRATE JUDGE